**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TODD ROWAN, | | ) |
| | | ) |
| | Plaintiff, | ) |
| | | ) |
| v. | | ) CIVIL ACTION NO: |
| | | ) 1:19-CV-01276-SDG |
| DUBBER, INC., | | ) |
| | | ) |
| | Defendant. | ) |
| | | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This case bears unique circumstances, in an otherwise straightforward set of facts. Dubber, Inc., Plaintiff Todd Rowan's former employer, owes Plaintiff his final commissions check. And Dubber has made numerous attempts to pay Plaintiff that money. Plaintiff, however, has unfortunately opted for another route: to not accept the money owed; and instead make ludicrous demands for hundreds of thousands of dollars in allegedly unpaid compensation – with no basis in law or fact. Plaintiff's stubborn litigiousness and extortionist conduct has forced Dubber to bear the costs of litigating this case through discovery – only to end right where the parties were in November 2018 – with Dubber actively attempting to pay Plaintiff what he is

*actually* owed. As explained in detail below, Plaintiff's contractual claims for severance, bonus commissions, and ESOP shares are entirely meritless. And Plaintiff has zero evidence of any misrepresentations or fraud. As a result, Dubber requests that the Court grant Dubber summary judgment on all of Plaintiff's claims.

## II.   **FACTUAL BACKGROUND**[1]

Defendant Dubber, Inc. ("Defendant" or "Dubber") is a technology company that provides a scalable call recording service, which has been adopted as a core network infrastructure by multiple global telecommunications carriers in North America, Europe, and Asia. [Declaration of James Slaney "Slaney Dec." at ¶4]. Dubber was founded in Melbourne, Australia in 2011. [Slaney Dec. ¶5]. In 2017, Dubber began implementing a strategy to expand into the United States. [Slaney Dec. ¶6]. To achieve this goal, Dubber engaged with a U.S.-based search firm to identify potential candidates in the U.S. to work for Dubber and assist in bringing Dubber's products into the U.S. market. [Slaney Dec. ¶7].

In March 2017, Plaintiff was contacted by a recruiter named John Butler, who worked for a company called SearchLogix. [Deposition of Plaintiff Todd Rowan "Pl.'s Dep." 39:3-17]. Butler explained to Plaintiff that Dubber was expanding into

---

[1] Pursuant to Local Rule 56.1(B), a separate Statement of Material Facts, which cites to record evidence establishing those facts, will be filed in support of this Motion.

the U.S. and was looking to hire a sales executive to develop its U.S. operations. [Pl.'s Dep. 39:21-40:8; Slaney Dec. ¶7-8]. After the door of potential employment was opened by initial discussions with Butler, James Slaney – Dubber's President and Co-Founder – thereafter began communicating directly with Plaintiff about his potential employment. [Pl.'s Dep. 50:3-14; Slaney Dec. ¶9]. Plaintiff and Slaney emailed back and forth about various issues related to the role and compensation, before Slaney ultimately presented Plaintiff with an offer of employment. [Pl.'s Dep. 68:9-73:7; Ex. 3].

Plaintiff's Offer Letter provides for various terms regarding Plaintiff's employment with Dubber, [Pl.'s Dep. Ex. 4], including: job duties [Pl.'s Dep. 75:9-23]; supervision by James Slaney [Pl.'s Dep. 75:24-76:9]; and Plaintiff's initial compensation [Pl.'s Dep. 76:10-77:3]. Specifically, the Offer Letter provides that Dubber will pay Plaintiff $180,000.00 per year with estimated OTE (on target earnings) of approximately $300,000.00. [Pl.'s Dep. Ex. 4]. On commissions, the Offer Letter states commissions will be "based on the increase of recurring revenue within the region, with accelerators for new Service Provider Agreements." [Pl.'s Dep. 77:9-12]. The Offer Letter does not contain any formula, percentage, or other quantifiable mode of calculation regarding commissions. [Pl.'s Dep. 79:7-16; Ex.

4].

Plaintiff accepted the offer, and began working for Dubber in April 2017. [Slaney Dec. ¶10]. Apart from the Offer Letter, Plaintiff never signed any other contract or agreement with Dubber pertaining to the terms, conditions, or compensation of his employment with Dubber. [Slaney Dec. ¶11]. Further, Dubber never offered Plaintiff any employment agreement or contract. [Slaney Dec. ¶12]. Instead, Plaintiff was an employee-at-will at all times. [Slaney Dec. ¶13].

During his employment, Plaintiff did receive certain commissions. [Pl.'s Dep. 80:6-81:17]. Specifically, and pursuant to Dubber's commission plan, Dubber paid Plaintiff commissions based on a formula tied to three distinct categories: (1) deal announcements; (2) committed revenue; and (3) addressable market. [Pl.'s Dep. Ex. 6]. The amount Plaintiff earned depended on whether, for a certain deal, Plaintiff was acting as an Account Manager or Sales Manager. [Slaney Dec. ¶14].[2] As an Account Manager, Plaintiff earned the following:

- For a deal announcement, Dubber paid Plaintiff $3,750.00 per deal announced to Dubber's investment market. *Id.*
- For committed revenue, Dubber paid Plaintiff $375.00 per every $1,250.00 USD in committed monthly revenue (per deal) on the date of signing. *Id.*
- For addressable market, Dubber paid Plaintiff $250.00 per every 30,000 users

---

[2] Plaintiff primarily performed the role of Account Manager, but sometimes also served as Sales Manager on various deals. [Slaney Dec. ¶15; Pl.'s Dep. 86:21-87:15].

in the addressable market that were connected to the call control platform which Dubber has the ability to record. *Id*.[3]

[Pl.'s Dep. Ex.6; Slaney Dec. ¶16].

As a Sales Manager, Plaintiff earned the following:

- For a deal announcement, Dubber paid Plaintiff $1,125.00 per deal announced to Dubber's investment market. *Id*.
- For committed revenue, Dubber paid Plaintiff $1,125.00 per every $1,250.00 USD in committed monthly revenue (per deal) on the date of signing. *Id*.
- For addressable market, Dubber paid Plaintiff $75.00 per every 30,000 users in the addressable market that were connected to the call control platform which Dubber has the ability to record. *Id*.[4]

Each category has additional terms and conditions that are provided in the Commission Plan. [Pl.'s Dep. Ex. 6; Slaney Dec. ¶17].

Monthly, Dubber produced a commission report that laid out exactly what Plaintiff would earn in commissions, pursuant to the commission plan discussed above. [Pl.'s Dep. 85:9-86:15; Slaney Dec. ¶18]. Plaintiff admits that all commissions paid to him were represented on these spreadsheets. [Pl.'s Dep. 88:1-4]. It is undisputed that Plaintiff was never paid any other category or type of commissions. [Pl.'s Dep. 81:18-24; 88:1-4]. Plaintiff never signed any other agreement or contract with Dubber relating to commissions. [Pl.'s Dep. 88:5-15].

---

[3] These numbers are calculated by multiplying a base number of $2,500.00 by various co-efficient multipliers provided in the commission plan. [Pl.'s Dep. Ex. 6].
[4] These numbers are calculated by multiplying a base number of $750.00 by various co-efficient multipliers provided in the commission plan. [Pl.'s Dep. Ex. 6].

In October 2018, Dubber determined that Plaintiff was not meeting the Company's expectations, as he failed to bring about the success that Dubber expected to achieve in the U.S. market. [Slaney Dec. ¶19]. As a result, Dubber terminated Plaintiff's employment on October 26, 2018. [Slaney Dec. ¶20; Pl.'s Dep. 142:17-143:5].

On November 10, 2018, following his termination, Plaintiff emailed Dubber leadership to address "monies [Plaintiff was] owed following the abrupt and unprofessional termination" of his employment. [Pl.'s Dep. Ex. 11]. In this email, Plaintiff claimed he was owed three categories of compensation:

- <u>Commissions</u>: Plaintiff alleged he was not paid his September 2018 commissions, totaling "$25,956.66." Plaintiff further alleged an underpayment of commissions in June 2018. Plaintiff last alleges that he was promised a 25% bonus commission on "the monthly increase in revenue produced in [his] region." In total, Plaintiff claimed he was owed approximately $115,206.00 in unpaid commissions.
- <u>Severance</u>: Plaintiff alleged that his "offer letter contains severance pay provisions" and that he was owed one year's salary as severance, or $180,000.00.
- <u>ESOP Shares</u>: Plaintiff alleged that his offer letter mentioned participation in Dubber's ESOP program, but that this "ESOP was never implemented." He estimated these shares would be valued at $32,000.00, if they existed.

[Pl.'s Dep. Ex. 11]. In total, Plaintiff claimed Dubber owed him over $320,000. *Id*. As will be explained below, Plaintiff's three claims – for severance, the "bonus" commissions, and ESOP shares – are baseless.

Approximately a week later, Dubber reached out to Plaintiff to arrange a meeting between Slaney and Plaintiff. [Pl.'s Dep. 159:8-13; Ex. 12; Slaney Dec. ¶21]. Dubber requested that Plaintiff "advise a suitable time" for a meeting with Slaney to discuss final payment of commissions, as well as the other matters. *Id.* [Slaney Dec. ¶22]. Importantly, Dubber agreed that Plaintiff was owed his final commission check – in an amount Calculated by Dubber as $28,907.39. [Slaney Dec. ¶23].

However, Dubber remained baffled as to Plaintiff's contrived claims for additional commissions, in the form of a 25% "bonus", severance pay, and ESOP shares. [Slaney Dec. ¶24]. Nonetheless, Dubber reached out to Plaintiff to arrange a meeting with the express intention to pay him the limited outstanding commissions. [Slaney Dec. ¶25]. Unfortunately, Plaintiff outright refused to meet with Slaney. [Pl.'s Dep. 158:18-159:7; Slaney Dec ¶26]. Instead, Plaintiff demanded that Dubber respond to the "other outstanding items" or Plaintiff would "move forward to the next steps." *Id.* In short, rather than meet with Dubber to accept the outstanding commissions, Plaintiff filed the instant lawsuit. [Doc. 01-1].

## III.   ARGUMENT AND CITATION OF AUTHORITY

In his Complaint, Plaintiff claims entitlement to the same three enumerated categories of compensation from his November 2018 email. [Doc. 01-1; Pl.'s Dep.

Ex. 11]. Except for the $28,907.39 in owed commissions, Plaintiff's remaining claims are entirely frivolous. Plaintiff has produced absolutely no evidence to prove any valid obligation for Dubber to pay the remaining amounts. As explained in detail below, Defendant is entitled to summary judgment on those claims.

### A.     Summary Judgment Standard.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[5] Here, Plaintiff brings claims for: (1) Breach of Contract; (2) Fraud; (3) Detrimental Reliance; and (4) Attorney's Fees under O.C.G.A. § 9-15-14. [Doc. 01-1]. As explained below, each claim fails.

### B.     Plaintiff's Breach of Contract Claim Fails as a Matter of Law.

Plaintiff's breach of contract claim is a product of state law, and so Georgia law must be applied.[6] To establish a breach of contract claim, Plaintiff must show (1) an enforceable agreement, (2) breach of that agreement, and (3) damages as a result of that breach.[7] The test of an enforceable contract under Georgia law is whether it is expressed in language sufficiently plain and explicit to convey what the

---

[5] FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[6] *Goia v. CitiFinancial Auto*, 499 Fed. Appx. 930, 940 (11th Cir. 2012).
[7] *See, e.g.*, *Broughton v. Johnson*, 247 Ga. App. 819, 819, 545 S.E.2d 370 (2001).

parties agreed upon.[8] To be enforceable by a court, "the material terms of that contract cannot be left to future negotiation."[9]

As the party asserting a contract, Plaintiff carries the burden to prove its existence.[10] "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[11] Each of these four essential terms must be certain. The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where these are essential.[12] "A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible."[13] To obtain summary judgment on Plaintiff's breach of contract claim, Dubber need only point to an absence of evidence supporting at least one essential element of the claim.[14]

---

[8] *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 292 S.E.2d 84, 86 (1982) (*citing West v. Downer*, 218 Ga. 235, 127 S.E.2d 359 (1962)).

[9] *Knoxville Med. Inv'rs, Ltd. v. Nat'l Healthcorp L.P.*, 192 Ga. App. 460, 462(3), 385 S.E.2d 110 (1989).

[10] *Workman v. McNeal Agency, Inc.*, 217 Ga. App. 686, 687(1), 458 S.E.2d 707 (1995).

[11] O.C.G.A. § 13–3–1.

[12] *Laverson v. Macon Bibb Cty. Hosp. Auth.*, 226 Ga. App. 761, 762, 487 S.E.2d 621, 623 (1997).

[13] *Id.*

[14] *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 405 S.E.2d 474 (1991).

"If the parties do not create a complete binding agreement, the courts are powerless to do it for them, or afford a remedy for a breach."[15] A court must first determine whether the contract provisions in dispute are ambiguous.[16] If the provisions are not ambiguous, the court must "enforce the contract according to its terms," but if there is ambiguity, the statutory rules of construction must be applied to determine the intent of the parties.[17] The construction of a contract, as a matter of law for the court, is thus "particularly appropriate" for adjudication by summary judgment.[18]

Here, Plaintiff claims that Dubber breached a "contract" to pay him: (1) severance pay; (2) ESOP shares; and (3) "bonus" commissions. [Doc. 01-1]. As explained below, Plaintiff cannot meet this burden for any such claim.

### 1. Dubber did not breach the severance portion of Plaintiff's Offer Letter.

Plaintiff has the burden of proving that an enforceable contract existed requiring Dubber to pay him severance.[19] To do so, Plaintiff must provide evidence showing (a) the subject matter of the contract, (b) the consideration, and (c) mutual

---

[15] *Sierra Associates, Ltd. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 169 Ga. App. 784, 791, 315 S.E.2d 250 (1984).
[16] *Id.*
[17] *Id.*
[18] *Overton Apparel, Inc. v. Russell Corp.*, 264 Ga. App. 306, 590 S.E.2d 260 (2003).
[19] *Cline v. Lee*, 260 Ga. App. 164, 168, 581 S.E.2d 558 (2003).

assent by all parties to all contract terms.[20] As a preliminary matter, Plaintiff is unable to show that he entered into any employment agreement or contract with Dubber. [Slaney Dec. ¶11-12]. There is no dispute that Plaintiff was – at all times – **an employee at will**. [Slaney Dec. ¶13].

Nonetheless, the Offer Letter does contain limited, enforceable obligations. [Pl.'s Dep. Ex. 4]. For example, the Offer Letter promises an annual salary of $180,000.00 per year. *Id.* If Dubber had failed to pay Plaintiff such salary, perhaps a breach of contract action would be viable.

Further, the Offer Letter **does in fact contain** a provision related to severance. *Id.* Specifically, the Offer Letter provides:

> Upon either of the below events occurring, Dubber will pay 1 year's Base Salary. Severance will only apply after the probation period has expired.
>
> 1.    Dubber Corporation including its American subsidiary is sold with the new owner not requiring the services of Todd Rowan post sale.
> 2.    Dubber Corporation ceases to have localized staff or generally ceases to operate in the American market, meaning that Todd Rowan would not be required within Dubber post such event.
>
> In all other circumstances, general terms of employment will apply in relation to Severance.

---

[20] *Id.*

[Pl.'s Dep. Ex. 4]. It is perfectly clear that neither of these two events occurred. [Slaney Dec. ¶27-28]. Dubber has not been sold. [Slaney Dec. ¶27]. And Dubber's American operations remain in place and have never ceased to operate. [Slaney Dec. ¶28]. This provision is clear that unless one of these two limited events occur, general terms of employment (i.e., <u>employment at will</u>) apply.[21]

The Offer Letter is "clear and unambiguous" that severance is only to be paid in two enumerated circumstances – neither of which occurred. As a result, the Court must "enforce the contract according to its clear terms" and reject Plaintiff's unsupported claim for severance pay. In a similar case, the Georgia Court of Appeals rejected a breach of contract claim for deferred commissions where the agreement provided that such commissions would be paid "[i]n the event of the occurrence of any of the Disabling Events prior to termination of this Agreement."[22] That agreement defined "Disabling Event" to include three express circumstances.[23] Because it was undisputed that none of the disabling events occurred, the Court

---

[21] *See* O.C.G.A. § 34-7-1 (Georgia employees are by default employees at will); *Schuck v. Blue Cross & Blue Shield of Georgia, Inc*., 244 Ga. App. 147, 149, 534 S.E.2d 533 (2000) (same). Plaintiff admits he worked from an office in Georgia, signed the Offer Letter in Georgia, and otherwise performed the duties of his role with Dubber in Georgia. [Pl.'s Dep. 127:6-128:2].

[22] *Faircloth v. A.L. Williams & Associates, Inc*., 219 Ga. App. 560, 561, 465 S.E.2d 722, 724 (1995).

[23] *Id.*

affirmed that the contract had not been breached, because "the language of the agreement is clear, and where the language is clear, there is no room for construction."[24]

Here, the language is likewise clear: Dubber owes no severance absent two limited qualifying events. [Pl.'s Dep. Ex. 4]. Neither event occurred. [Slaney Dec. ¶¶27-28]. As a result, there is no room for any construction and the Court must deny Plaintiff's claim for breach of the severance provision.[25]

Plaintiff has claimed that, during the pre-offer negotiations, a third-party recruiter told him that Dubber would pay severance so long as Plaintiff was not terminated for "gross negligence." [Pl.'s Dep. 48:8-14]. Plaintiff has produced no evidence validating that this communication occurred, and Plaintiff presented no evidence of a valid contract stating these terms. [Pl.'s Dep. 49:1-8].

Further, any evidence of the recruiter's alleged statements would be inadmissible hearsay.[26] Any comments by a third-party recruiter would have no

---

[24] *Id.*

[25] *See, e.g.*, *Cain v. H&R Block, Inc.*, 1:04-CV-3691-JTC, 2005 WL 8155034, at *9 (N.D. Ga. June 7, 2005) (no breach of contract where agreement provided for severance only if defendant materially breached agreement, which Plaintiff did not prove); *see also McAllister v. City of Riesel, Tex.*, 146 F.2d 130 (5th Cir. 1944) (no breach where plaintiff "[did] not allege the performance of the conditions precedent to [his] right to recover").

[26] O.C.G.A. § 24-8-801.

effect on these proceedings.[27] But even if the statements were not hearsay and were not made by a third party, all such evidence is nonetheless inadmissible as parol evidence.[28] As stated above, the Offer Letter is perfectly clear in describing the two limited contingencies that would warrant payment of severance. [Pl.'s Dep. Ex. 4]. Any attempts by Plaintiff to twist or misinterpret or expand clear language of the contract fail as a matter of law.[29] As a result, Dubber is entitled to summary judgment on Plaintiff's claim for severance.

### 2. Plaintiff is not entitled to any ESOP shares.

Again, Plaintiff has the burden of proving that an enforceable contract existed requiring Dubber to pay him ESOP shares.[30] And again, Plaintiff cannot meet this burden because he has no evidence of an enforceable agreement to pay him ESOP shares under the circumstances of his employment.

Regarding the ESOP, Plaintiff's Offer Letter only states that "[j]oining Dubber enables you to become part of the Employee Share Option Program (ESOP)." [Pl.'s Dep. Ex. 4]. This is clearly nothing short of an acknowledgment that

---

[27] *Reindel v. Mobile Content Network Co., LLC*, 652 F. Supp. 2d 1278, 1289 (N.D. Ga. 2009).

[28] O.C.G.A. § 24-6-1.

[29] *D.S. Ameri Const. Corp. v. Simpson*, 271 Ga. App. 825, 826, 611 S.E.2d 103 (2005).

[30] *Cline*, 260 Ga. App. at 168.

Plaintiff's employment grants him eligibility to participate in a *future benefit*.[31] Such vague language cannot form the basis of an enforceable contract.[32]

Here, it is clear that the ESOP program was **never created** during Plaintiff's employment. [Pl.'s Dep. 130:2-3; Slaney Dec. ¶29]. As a result, at best, the language provides for an agreement with a condition precedent – the creation of the ESOP program itself.[33] Even if Plaintiff could show a valid agreement to pay ESOP, which he cannot, Plaintiff's breach of contract claim as it relates to ESOP would still fail because Plaintiff cannot meet his burden to show damages with "evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages."[34] Damages cannot be left to speculation, conjecture and guesswork.[35] The Offer Letter certainly does not guarantee Plaintiff any number of shares; nor does it provide the value of the shares allegedly provided. [Pl.'s Dep. Ex. 4]. For these reasons, this language cannot constitute a lawful contract.[36] As a result, Plaintiff has no evidence of an enforceable agreement to pay

---

[31] *Knoxville Med. Investors, Ltd.*, 192 Ga. App. at 462(3) (no contract where the material terms were left to future negotiation).

[32] *Nat'l Refrigerator & Butchers' Supply Co. v. Parmalee*, 9 Ga. App. 725, 72 S.E. 191 (1911) ("A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.").

[33] OCGA § 13–3–4.

[34] *National Refrigerator & Butchers' Supply Co*., 9 Ga.App. at 725(1).

[35] *Studebaker Corp. v. Nail*, 82 Ga. App. 779, 62 S.E.2d 198 (1950).

[36] *Rodriguez v. Vision Correction Grp., Inc.*, 260 Ga. App. 478, 479, 580 S.E.2d 266,

him ESOP shares, and the Court should grant summary judgment to Dubber on this claim.[37]

        3.     *Plaintiff has no evidence of any enforceable "bonus" commissions.*

Plaintiff also claims that Dubber owes him 25% of the increased revenue in his market (the United States) for the entirety of his employment with Dubber. [Pl.'s Dep. 99:25-100:10]. Of course, Plaintiff possesses no valid evidence of any enforceable agreement covering these "bonus" commissions. As explained above, Dubber did in fact pay Plaintiff commissions during his employment – <u>but never in the form of 25% of increased revenue</u>. [Pl.'s Dep. 102:4-19].[38] Instead, Plaintiff appears to have assumed this 25% figure from an earlier email from Slaney prior to the issuance of the Offer Letter. [Pl.'s Dep. 105:3-25]. Specifically, Slaney – when suggesting how Plaintiff could reach his theoretical on target earnings – states that "this is how we view it . . . [y]ou also earn a percentage of the monthly revenue increase within this quarter of 25%." [Pl.'s Dep. Ex 3]. Plaintiff has apparently

---

267 (2003) (no breach of contract where "[t]he details of the stock option plan, including the timing of its implementation, were never defined, and its value was purely speculative"); *Crawford v. Baker*, 207 Ga. 56, 60–61, 60 S.E.2d 146, 149–50 (1950) (failure to perform a condition precedent will not support a claim of breach).

[37] *Cline*, 260 Ga. App. at 168.

[38] *See Arby's, Inc. v. Cooper*, 265 Ga. 240, 454 S.E.2d 488, 489 (1995) (finding a promise to pay a bonus not enforceable and not rendered definite by any subsequent conduct).

twisted this single sentence into a concocted claim that he should be paid 25% of all increased revenue during the term of his employment. Later, when the Offer Letter was finalized and signed, the document did not include any mention of a 25% bonus commission formula. [Pl.'s Dep. Ex. 4]. Dubber in fact never agreed to pay Plaintiff any bonus commission. [Slaney Dec. ¶31]. Thus, Plaintiff cannot present evidence of a "meeting of the minds" or any mutual assent requiring Dubber to pay him 25% of revenue.[39]

This language closely mirrors language found unenforceable by the Georgia Court of Appeals in *Edwards v. Cent. Georgia HHS, Inc.*, wherein an employee sought to recover unpaid funds from his employer under a provision of an offer letter, which provided for "an incentive bonus plan . . . that is expected to provide between 15% and 25% of your base salary."[40] The Court found this language unenforceable because it "did not expressly state the terms under which [the employee] would receive a bonus, nor did it specify the exact amount or a set formula for determining the exact amount of the bonus."[41] The language in Plaintiff's Offer Letter is even less enforceable than that in *Edwards*, because Plaintiff's Offer Letter is entirely

---

[39] *Aero Const. Co. v. Grizzard*, 76 Ga. App. 649, 652(2), 46 S.E.2d 767 (1948). ("Until all understand alike, there can be no assent, and therefore, no contract.").
[40] 253 Ga. App. 304, 558 S.E.2d 815 (2002).
[41] *Id.* at 817–18.

silent on this alleged 25% bonus commission. [Pl.'s Dep. Ex. 4].

The pre-Offer Letter suggestion from Slaney merely states "[y]ou also earn a percentage of the monthly revenue increase within this quarter of 25%" – there is no definition of revenue, no explanation of what revenues will count towards it, and it merely states "increase within this quarter" – without any explanation as to what quarter it is referencing. Such vague negotiations fodder simply cannot form the basis of an enforceable promise.[42] As a result, Dubber is entitled to summary judgment rejecting Plaintiff's speculative claim for a 25% bonus commission.[43]

### 4. *Plaintiff's refusal to accept owed commissions.*

Dubber finds itself in the unusual position of agreeing that it owes Plaintiff payment of certain standard commissions, but Plaintiff has not accepted payment. Specifically, Plaintiff is owed his final commission check, amounting to $28,907.39, which did not become payable until after his termination. [Slaney Dec. ¶33]. Unfortunately, Plaintiff has repeatedly refused to accept this payment. In November 2018, Dubber attempted to meet with Plaintiff to provide him with a check. [Slaney

---

[42] *See, e.g., Counterman v. Intercept, Inc.*, 2006 WL 8431903, at *8 (N.D. Ga. Aug. 11, 2006) (promise to pay future sales commissions not enforceable where neither the offer letter nor the parties' subsequent conduct provided an exact amount or formula for determining Plaintiff's sales commissions).
[43] *Id.*

Dec. ¶21].[44] Plaintiff, however, refused to accept anything short of the alleged hundreds of thousands of dollars that he asserts is owed to him in this litigation. [Pl.'s Dep. 158:18-159:22; Ex. 11]. At any time, Plaintiff is able to accept the $28,907.39 in unpaid commissions. [Slaney Dec. ¶34]. However, this is the only amount owed to Plaintiff and, as explained above, Plaintiff's remaining claims for unpaid compensation – under the Offer Letter or otherwise – are entirely baseless.

### C.   <u>Plaintiff Admits He Has No Evidence of Fraud</u>.

To recover for fraud, Plaintiff must show five elements: (1) a false representation, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damages.[45] For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.[46] As a general rule, actionable fraud cannot be based on statements and promises as to future events.[47] And significantly, "when the representation consists of general commendations or mere expressions of opinion, hope, expectation and the like, the party to whom it is made is not justified

---

[44] In recognition of the standard commissions owed to Plaintiff, and in an effort to avoid further litigation, Dubber also filed an Offer of Judgment to Plaintiff for almost twice the amount of commissions actually owed to him. [Doc. 23].

[45] *Crawford v. Williams*, 258 Ga. 806, 375 S.E.2d 223 (1989).

[46] *Id.*

[47] *Ely v. Stratoflex, Inc.*, 132 Ga. App. 569, 571(2), 208 S.E.2d 583 (1974) ("Nor does actionable fraud result from a mere failure to perform promises made.").

in relying upon it, and thus, it cannot serve as the basis for either a fraud or a negligent misrepresentation claim."[48]

Here, Plaintiff does not have any evidence to support even a single element of a claim for fraud. First, he has produced no evidence of a false representation. Dubber expects that Plaintiff will identify a series of "broken promises" to support his claim for fraud. [Pl.'s Dep. 134:11-22]. But Plaintiff cannot produce any evidence that any of these statements were false. And, the case law is clear that "a mere failure to perform promises made" cannot create a claim for fraud.[49] The only way for such a claim to be viable is for Plaintiff to provide evidence to show that any such promise was "made with a present intention not to perform."[50]

Here, Plaintiff candidly admits that, "I don't have proof to say if [Dubber's alleged misrepresentations] were intentional." [Pl.'s Dep. 137:9-138:7]. This stark admission precludes any finding that any representations were made with a present intention not to perform **and** any finding of scienter – two necessary elements of a fraud claim.[51] There can be no fraud where "[plaintiff] has presented no evidence

---

[48] *Bithoney v. Fulton-DeKalb Hosp. Auth.*, 313 Ga. App. 335, 343(2), 721 S.E.2d 577 (2011).

[49] *Ely*, 132 Ga. App. at 571.

[50] *Kirkland v. Pioneer Mach., Inc.*, 243 Ga. App. 694, 695, 534 S.E.2d 435 (2000).

[51] *Fuller v. Perry*, 223 Ga. App. 129, 131–32, 476 S.E.2d 793, 796 (1996) (no fraud where Plaintiff's evidence of scienter/intent was merely a "subjective opinion [with] no proof for or against").

that [defendant] did not intend to carry through with the promises [defendant] made at the time the parties reached their agreement.[52]

Even if Plaintiff had not admitted at deposition that he had no evidence of scienter/intent, Plaintiff is still unable to show fraud because he made no attempt to obtain any testimony from any Dubber representative. Despite having over six months of discovery, Plaintiff did not depose or otherwise obtain testimony from Slaney – or any other Dubber executive. Without such testimony, Plaintiff's burden to prove that anyone at Dubber made a false statement with the intention not to perform is an impossible one. As a result, Dubber is entitled to summary judgment on Plaintiff's fraud claim.[53]

### D. Plaintiff's Claim for "Detrimental Reliance" Fails as a Matter of Law.

In his Complaint, Plaintiff alleges that he "had a justifiable right to rely upon the misrepresentation made to him by Defendant" and "was materially damaged" as a result. [Doc. 01-1]. Dubber is uncertain as to the theory of law under which Plaintiff brings such a claim, but believes that Plaintiff is attempting to bring a claim for promissory estoppel, which requires proof that "(1) the defendant made a certain

---

[52] *Obonyano v. Aderibigbe*, No. 1:07-CV-1854-ODE, 2009 WL 10672142, at *5 (N.D. Ga. Feb. 10, 2009).
[53] *Crawford*, 258 Ga. at 375.

promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, foregoes, or rendered a valuable right."[54]

Promissory estoppel is an equitable doctrine, and as such requires reasonable reliance on a promise, meaning that "the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify such reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment."[55] With respect to detrimental reliance, Plaintiff must show that he changed his position to his detriment "by surrendering, foregoing, or rendering a valuable right."[56]

Here, Plaintiff's claim for promissory estoppel fails for numerous reasons. First, Plaintiff cannot identify any material misrepresentations by Dubber. To the

---

[54] *Simpson Consulting, Inc. v. Barclays Bank PLC*, 227 Ga. App. 648, 656, 490 S.E.2d 184 (1997); O.C.G.A. § 13–3–44(a).

[55] *Simpson Consulting, Inc.*, 227 Ga. App. at 657.

[56] *See, e.g.*, *Sierra Craft, Inc. v. T.D. Farrell Const., Inc.*, 282 Ga. App. 377, 382, 638 S.E.2d 815 (2006); *Clark v. Byrd*, 254 Ga. App. 826, 564 S.E.2d 742 (2002) ("Detrimental reliance which causes a substantial change in position will constitute sufficient consideration to support promissory estoppel.").

extent that Plaintiff identified alleged "promises" to pay him ESOP shares or other oral statements related to his compensation, any such representation cannot be the basis of a claim for promissory estoppel because "[t]he Eleventh Circuit has held in the promissory estoppel context that it usually is unreasonable to rely on a substantial promise that has not been reduced to writing."[57] An oral promise for additional, substantial compensation or valuable shares in a company therefore cannot form the basis of a promissory estoppel claim.[58]

Further, Plaintiff has no evidence that he surrendered or forewent a valuable right.[59] And even if he did, Plaintiff cannot show that "injustice can be avoided only by the enforcement of the promise."[60] Dubber paid Plaintiff $180,000.00 per year plus commissions during his employment. [Slaney Dec. ¶35]. Plaintiff suffered no injustice; he was simply terminated for poor performance. As a result, Dubber is entitled to summary judgment on Plaintiff's claim for promissory estoppel.

### E. Plaintiff's Claim for Attorney's Fees is Not Viable.

Plaintiff also brings a claim for attorney's fees under O.C.G.A. § 9-15-14, which provides for an award of "reasonable and necessary attorney's fees" where a

---

[57] *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1340 (11th Cir. 1998).
[58] *See, e.g.*, *Reindel*, 652 F. Supp. 2d at 1291 (rejecting promissory estoppel based on alleged oral promise for 5% of a company's stock).
[59] *Simpson Consulting, Inc.*, 227 Ga. App. at 656.
[60] *Id.*

"party has asserted a claim . . . with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim."[61] Plaintiff claims that Dubber "has no substantial justification for refusing to pay commissions owed to the Plaintiff, severance pay, and shares of stock pursuant to Dubber's ESOP Plan" and that Dubber's actions "are intended to delay and harass the Plaintiff, entitling him to an award of attorney's fees." [Doc. 01-1]. Dubber is entitled to summary judgment on this claim for two reasons.

First, an attorneys' fees claim under O.C.G.A. § 9-15-14 cannot be brought in federal court.[62] Actions may be brought under O.C.G.A. § 9-5-14 "in any court of record of this state."[63] This language "makes it clear that the statute was not intended to provide for claims in federal court."[64] This Court has repeatedly reaffirmed that claims brought under O.C.G.A. § 9-15-14 are subject to dismissal in federal court.[65] Consequently, Plaintiff's claim for attorney's fees is inappropriate in this forum and

---

[61] O.C.G.A. §9-15-14.
[62] *Union Carbide Corp. v. Tarancon Corp.*, 682 F. Supp. 535, 544 (N.D. Ga. 1988).
[63] O.C.G.A. § 9-15-14.
[64] *Thomas v. Brown*, 708 F. Supp. 336, 339 (N.D. Ga. 1989).
[65] *Edwards v. Associated Bureaus, Inc.*, 128 F.R.D. 682, 683 (N.D. Ga. 1989) (dismissing claim for attorneys' fees under O.C.G.A. § 9-15-14); *Gerald Metals, Ltd. v. Horowitz*, No. C88–1107 (N.D.Ga. June 8, 1989) (same); *Munson v. Strategis Asset Valuation & Mgmt., Inc.*, 363 F. Supp. 2d 1377, 1380 (N.D. Ga. 2005) (same).

must be dismissed.

Second, even if such a claim were viable, Plaintiff has no evidence that Dubber has asserted a "claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim."[66] As explained above, Dubber asserts numerous viable defenses to Plaintiff's frivolous claims. In fact, it is Plaintiff who has asserted frivolous claims – by refusing to accept monies owed in order to use the owed amount as leverage for demanding hundreds of thousands of dollars for invalid additional claims. The Court should reject Plaintiff's extortionist behavior and reject his claim for attorney's fees under O.C.G.A. 9-15-14.

## IV.   **CONCLUSION**

Based on the above, Defendant requests this Court grant summary judgment to Defendant on all Plaintiff's claims and dismiss Plaintiff's Complaint [Doc. 01-1] in its entirety, *with prejudice*.

Respectfully submitted this 18th day of November, 2019.

s/Luke Donohue
Luke P. Donohue
GA Bar No. 193361
luke.donohue@ogletree.com

---

[66] O.C.G.A. § 9-15-14.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA  30303
Telephone:  404.881.1300
Fax:  404.870.1732

*Counsel for Defendant*

# LOCAL RULE 7.1(D) CERTIFICATION

By signature below, Defendant's counsel certifies that this Brief was prepared

in Times New Roman 14 point, which is approved by the Court in LR 5.1(B).

*s/Luke Donohue*
Attorney for Defendant

40634153.2